UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. S1-4:23CR00304 AGF (JMB) |
| JOHN BREAULT, | ) ) ) |
| Defendant. | ) |

**ORDER**

This matter is before the Court on the Defendant's pretrial motion. All pretrial motions were referred to United States Magistrate Judge John M. Bodenhausen under 28 U.S.C. § 636(b). Defendant John Breault filed a Motion to Suppress Evidence (Doc. No. 45). Defendant is charged by Superseding Indictment with one count of being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), one count of Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1). (Doc. No. 51).

In his motion to suppress, Defendant asserts that officers did not have reasonable suspicion to stop the SUV in which he was a passenger, and therefore the evidence seized from his person must be suppressed. He asserts further that because the car stop was unconstitutional, the evidence seized from a search of the SUV should be suppressed as the fruit of his illegal detention.

Judge Bodenhausen held an evidentiary hearing on April 2, 2025. Deputies Jason Slater and Steven Battaglia, from the Lewis County, Missouri Sheriff's Department, and Special Agent ("SA") Michael Johnston, with the Northeast Missouri Drug Task Force

`

("NEMO"), testified and were subject to cross-examination. The parties thereafter filed post-hearing briefs. On June 17, 2025, Judge Bodenhausen issued a Report and Recommendation ("R&R"), recommending that Defendant's motion to suppress evidence be denied. (Doc. No. 73)  Defendant filed objections to the R&R on July 30, 2025 (Doc. No. 80), and the Government responded to the Objections on September 5, 2025 (Doc. No. 89).

Summary of the Facts

The facts surrounding Defendant's arrest on October 4, 2022, are detailed in the R&R and will not be repeated here. Those facts are well-supported by the evidence and are adopted and incorporated herein. In summary, Defendant had criminal history that included firearms and controlled substances offenses, in particular related to methamphetamine. Defendant was released from the Missouri Department of Corrections on May 27, 2022, and listed his address at the residence of Warner Wheeler in a rural area in La Belle, Missouri. Wheeler was known to be a user of methamphetamine, and prior drug investigations were associated with Wheeler's residence. Sometime after his release Defendant was declared an absconder and a parole violator's warrant was issued. The law enforcement officers were familiar with Defendant, who had a history of selling methamphetamine, and they had been trying to locate him since July 1, 2022.

On October 4, 2022, a confidential informant (CI) working with NEMO advised that Defendant was going to be at Wheeler's residence later in the day related to the purchase of about one pound of methamphetamine, and that he was expected to be with a female in a vehicle from Illinois. Based on this information, the officers began surveillance of Wheeler's residence at 4:00 p.m. that day. Just before 7:00 p.m. what appeared to be a

2

silver but was actually a light gold SUV arrived at Wheeler's residence.  It was the only car that came to the residence.  There were two occupants, and the officer believed but was uncertain that the passenger was Defendant Breault.  The occupants stayed for approximately an hour, and during that time the person believed to be Defendant engaged in unusual activity near the car, that included looking around a lot and opening doors.  He also took what appeared to be a backpack into the residence.

At approximately 8:00 p.m., the SUV left Wheeler's residence and drove toward Illinois.  The SUV drove in an unusually cautious manner, below the speed limit and adhering to all traffic requirements, in a manner uncommon for that rural area.  The SUV stopped near the ATM of a bank in La Belle, MO.  A black sedan occupied by two males arrived and parked at the bank.  The front passenger approached the area of the SUV, stayed for 2-3 minutes, and then returned to the sedan, which drove off.  Although SA Johnston could not see if the passenger actually approached the SUV, based on his training and experience he believed what he observed was consistent with a drug transaction.

The SUV thereafter turned around, then returned to the bank, and SA Johnston observed Wheeler exit the rear driver's side seat of the SUV and use the ATM to obtain cash.  That Wheeler had been in the back seat reasonably caused SA Johnston to conclude there were three persons in the vehicle.  The officers ran the license plate of the vehicle and learned it was registered in Quincy, IL to an older woman not known to associate with Wheeler.[1]  The SUV returned to Wheeler's residence, again driving in an unusually cautious

---

[1] SA Johnston believed the SUV was silver and not gold as indicated in the Illinois Department of Revenue information, but all parties agree this conclusion was wrong, and that the SUV was light gold or champagne-colored.  The officer attributed this error to the lighting.

3

manner, then departed the residence and headed in the direction of Quincy, Illinois, where Defendant was believed to be staying.

The officers were in phone contact with one another throughout these events and decided to conduct an investigative stop. The officers believed they had reasonable cause for the traffic stop, both because they believed the vehicle was engaged in criminal activity and because they believed Defendant – who had an outstanding warrant – was in the vehicle. At approximately 9:00 p.m., SA Johnston initiated a traffic stop. His vehicle had flashing lights, which he activated, but no siren. The driver slowed but did not stop. Deputy Battaglia came in his marked vehicle with lights and sirens, and the vehicle stopped on the shoulder of the highway. The SUV was driven by a female, Ella Jones, and the officers recognized Defendant as the passenger. The individuals initially would not unlock the doors, and one of the officers therefore broke out the rear passenger window. It is undisputed that Defendant attempted to get the driver to restart the car and put it in drive, and when SA Johnston reached inside to cover the ignition switch, Defendant began to pry, hit and kick his hand. After the officers unlocked the car and removed Defendant, he continued to physically resist them.

Defendant was formally arrested on the outstanding warrant, as well as for resisting arrest and assaulting SA Johnston. The officers searched Defendant incident to his arrest, recovering methamphetamine, a quantity of pills later identified as morphine, suspected heroin, drug paraphernalia and U.S. currency. The officers advised the driver of her rights under *Miranda* and she agreed to speak with the officers. She advised there was a large amount of methamphetamine in the car. She provided consent to search the SUV and the officers also obtained a state search warrant for the vehicle. In their subsequent search of

4

the SUV the officers recovered items including more than 400 grams of methamphetamine and a loaded firearm.

## Discussion

In the R&R, Judge Bodenhausen concluded that (i) Defendant had Fourth Amendment standing to challenge the constitutionality of the car stop, which resulted in his seizure and detention, and the search of his person incident to his arrest; (ii) based on the totality of the facts, the traffic stop was constitutional as the officers had reasonable, articulable suspicion to believe that the occupants were engaged in criminal activity and that Defendant was in the vehicle; (iii) as the stop was constitutional, Defendant was lawfully arrested both on the outstanding warrant and for resisting arrest and assault; and (iv) the officers were thereafter authorized to search Defendant incident to his arrest. Even if the traffic stop lacked reasonable suspicion, the Magistrate Judge concluded that the evidence obtained from the search of Defendant should not be suppressed. The existence of the outstanding warrant, coupled with Defendant's resisting arrest and assault, provided intervening circumstances under the attenuation doctrine, thereby providing probable cause to arrest Defendant and search him incident to the arrest. Further, Defendant's resistance and assault provided independent probable cause for his arrest and search incident to the arrest. With respect to the search of the vehicle, the Magistrate Judge concluded that as a passenger of the vehicle, Defendant had no standing to contest the search of the vehicle, and in any event, the search was lawfully conducted pursuant to the driver's consent and a valid state search warrant.

In his objections, Defendant continues to assert that the officers lacked reasonable suspicion to conduct the traffic stop and therefore lacked authority for his arrest and the

5

search of his person. He contends that the attenuation doctrine does not apply under these facts, especially given the gravity of the officers' unlawful conduct, and that the search of the vehicle should be suppressed as the fruit of the unlawful stop.

When a party objects to a Report and Recommendation concerning a motion to suppress in a criminal case, the Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)). The Court conducted a *de novo* review of the motion to suppress, including a review of the transcript of the hearing and the exhibits introduced at the hearing. Based on that review, the undersigned concludes that the Magistrate Judge made proper factual findings and correctly concluded that none of the evidence is subject to suppression.

The Traffic Stop

Based on the thorough and detailed reasoning in the R&R, the Court agrees that the officers had objectively reasonable suspicion that the vehicle was involved in drug activity, sufficient to initiate a traffic stop. They also had reasonable suspicion that Defendant, who was wanted on an outstanding warrant, was likely a passenger in the vehicle. In his objections Defendant challenges the officers' reliance on the CI and argues that the traffic stop was based on nothing more than a mere hunch. The Court disagrees.

Here the officers had information from a CI that on October 4 Defendant would be coming to Wheeler's residence – whose residence had previously been investigated for drug activity – in connection with a significant methamphetamine transaction. Defendant contends little weight should be given to the CI's information because the CI's attempts to engaged in a drug transaction with Defendant were ultimately unsuccessful. Defendant's

6

argument lacks merit.   The CI here was not anonymous but rather was someone known to an agent at NEMO, with whom he personally worked.   On June 30, 2022, when the CI attempted to make a controlled purchase of methamphetamine from Defendant, he came to the CI's residence with methamphetamine to sell.   The sale did not go through because Defendant wanted the CI to smoke methamphetamine with him to be sure the CI was not working with the police, but the CI refused to smoke the methamphetamine.   Defendant then left the residence with an unknown female in a black sedan with Illinois tags.   The discussion was monitored by one of the officers.   While it is correct that the transaction ultimately did not take place, the facts surrounding the transaction reflect Defendant's involvement in drug dealing and support the CI's credibility.   After June 30, 2022, and before Defendant's October arrest, the CI made other successful controlled buys with other suspects, which resulted in charges being filed, and SA Johnston credibly testified that the information from the CI had proven reliable.

   The officers were also able to corroborate the CI's information through their surveillance on October 4.   They observed a car similar to the description the CI provided arrive at the residence within the time frame suggested – the only car to arrive that evening – with someone whom they believed to be Defendant.   Through their continued surveillance the officers obtained further information, detailed more fully in the R&R, supporting their reasonable belief that Defendant was in the SUV and was engaged in unlawful conduct.   For example, they observed the SUV drive in an overly cautious manner, below the speed limit and conspicuously adhering to all traffic signals, uncommon for the rural area in which they were located.   When the SUV drove to the bank lot and parked near the ATM machine, they observed activity they reasonably believed to be consistent with a drug transaction.   They

also observed that Wheeler was a backseat passenger, providing a reasonable belief that there were three persons in the car, one of whom was likely Defendant.  The SUV then returned to Wheeler's residence, and thereafter headed toward Quincy, IL, where Defendant was believed to be residing.  As such, the stop was supported by information from a reliable CI that the officers corroborated.

Defendant further contends that the Magistrate Judge erred in finding reasonable suspicion by giving undue weight to the officers' own experience and training.  He also attempts to look at each fact in isolation, offering innocent explanations.  But that approach is not proper under the law.  The law requires that the Court look at the totality of the circumstances in assessing whether an officer has an objective and particularized basis to suspect wrongdoing.  *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Robinson*, 670 F.3d 874, 876 (8th Cir. 2012).  Further the case law recognizes that law enforcement officers may draw on their own experience and specialized knowledge.  *Id.* Reviewing the totality of the circumstances, including the above facts and the further details provided in the R&R, the Court finds that the officers had reasonable, articulable suspicion that the occupants of the SUV were engaged in criminal activity, and that Defendant, who had an outstanding warrant, was in the vehicle.  They were therefore justified in conducting an investigatory stop.

<u>The Search Incident to the Arrest</u>

Because the stop was not unconstitutional, the Court agrees with the Magistrate Judge's conclusion that the officers had probable cause to arrest Defendant on the parole violation warrant and for his obstruction and assault, and to conduct a search incident to his arrest.

Even if the stop lacked reasonable suspicion and was unconstitutional – a finding this Court does not make – the Court also agrees with the Magistrate Judge that suppression is still not warranted under the attenuation exception to the exclusionary rule. Under this exception evidence is admissible "when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by the suppression of the evidence obtained.'" *Utah v. Strieff*, 579 U.S. 232, 238 (2016) (quoting *Hudson v. Michigan*, 547 U.S. 586, 593 (2006)). The *Strieff* test looks to three factors: (i) the temporal proximity between the unconstitutional conduct and the discovery of the evidence at issue, (ii) the presence of intervening circumstances, and (iii) and perhaps most significantly, the purpose and flagrancy of the officers' misconduct. *Id.* Here, only the first factor weighs in favor of suppression. With respect to the second factor, the Court agrees, for the reasons set forth more fully in the R&R, that Defendant's resisting arrest and assaultive conduct present strong intervening circumstances that weigh against suppression.[2] *See United States v. Forjan*, 66 F.4th 739, 748-49 (8th Cir. 2023). Defendant asserts that "the purpose and flagrancy of the misconduct" require suppression, but again the Court disagrees. The Court finds that the officers in fact were justified in conducting the traffic stop, and if not, there is no suggestion of the type of severe police misconduct required to prevent application of the attenuation exception. *See United States v. Lowry*, 935 F.3d 638, 643 (8th Cir. 2019).

---

[2] Defendant argues that there was no "intervening" circumstance because the warrant was pre-existing and known to the officers. But the parole violation warrant is not the circumstance at issue, rather it is Defendant's resistance to the arrest. And of course, the fact that Defendant was subject to a parole violator's warrant did not require him to resist arrest or assault the officer.

Finally, assuming *arguendo*, the stop and arrest were illegal, Defendant's resistance and assault of the officer provide independent grounds for a second, legitimate arrest. *United States v. Chumley*, No. 24-1724, 2025 WL 2331838, at *2 (8th Cir. Aug. 13, 2025); *United States v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006); *United States v. Tucker*, Crim. No. 22-261 (JRT/DJF), 2023 WL 2889683, at *3 (D. Minn. Apr. 11, 2023). For this reason, as well, the officers were justified in arresting Defendant for his conduct at the time of his arrest, and for conducting a search incident to the arrest.

Search of the Vehicle

The Court also agrees with the Magistrate Judge's conclusion that Defendant lacks standing to contest the search of the vehicle. Indeed, Defendant concedes that he lacks standing to contest the search of the vehicle if the stop was constitutional. Further, the search was lawfully conducted both pursuant to consent of the driver and a state search warrant, the validity of which Defendant does not contest. As such, there is no basis to suppress the evidence obtained from the search of the vehicle.

Thus, after careful and independent consideration, the Court will overrule Defendant's Objections and will adopt and sustain the thorough reasoning of Magistrate Judge Bodenhausen set forth in support of his recommended ruling.

Accordingly,

**IT IS HEREBY ORDERED** that the Report and Recommendation of United States Magistrate Judge [ECF No. 73] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Evidence [Doc. No. 45] is **DENIED**.

**IT IS FURTHER ORDERED** that this matter remains scheduled for Jury Trial on **November 3, 2025, at 9:00 a.m.**

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 15th day of September, 2025.